# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

REYNALDO AGAVO,

      Petitioner,

vs.

DWIGHT NEVEN, *et al.*,

      Respondents.

Case No. 2:13-cv-01741-JCM-CWH

**ORDER**

This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by a Nevada state prisoner represented by counsel.  Before the court is respondents' motion to dismiss the first amended petition and petitioner's motion for a stay and abeyance.  (ECF Nos. 28 & 34).

**I.  Procedural History**

On January 30, 2006, petitioner was charged by amended information with one count of sexual assault with a minor under fourteen years of age (count 1) and lewdness with a child under fourteen years of age (count 2).  (Exhibit 25).[1]  The first trial commenced on January 30, 2006 and concluded on February 3, 2006.  (Exhibits 26-33).  Following jury deliberations, the jury foreman informed the court that the jury was unable to reach a unanimous verdict.  The court found the jury to be hopelessly deadlocked and declared a mistrial.  (Exhibit 37).

---

[1]  The exhibits referenced in this order are found in the court's record at ECF Nos. 16-25, 35.

1        Petitioner's second trial began on August 14, 2006, and proceeded through August 18, 2006.

2   (Exhibits 49-58).  The jury returned a guilty verdict on both counts of the amended information.

3   (Exhibit 57).  The judgment of conviction was filed on November 2, 2006.  (Exhibit 62).  Pursuant

4   to the judgment of conviction, the court imposed the following sentence: on count 1, twenty years to

5   life in state prison and on count 2, ten years to life in prison, consecutive to count 1.  (*Id.*).

6   Petitioner filed a direct appeal to the Nevada Supreme Court.  (Exhibit 63).  Petitioner's amended

7   opening brief was filed on April 2, 2008.  (Exhibit 94).  By order filed May 29, 2009, the Nevada

8   Supreme Court affirmed petitioner's conviction.  (Exhibit 103).  The Nevada Supreme Court denied

9   petitions for rehearing and en banc reconsideration.  (Exhibits 105 & 107).  Remittitur issued on

10   November 3, 2009.  (Exhibit 108).

11        Petitioner filed a post-conviction habeas petition in the state district court on October 28,

12   2010.  (Exhibit 110).  On May 16, 2011, petitioner's retained counsel filed a supplemental brief in

13   support of the post-conviction habeas petition.  (Exhibit 115).  The state district court held hearings

14   on the post-conviction petition on November 10, 2011, and December 8, 2011.  (Exhibits 123 &

15   124).  The state district court verbally denied the post-conviction petition from the bench on

16   December 8, 2011.  (Exhibit 124, at p. 13).  On December 19, 2011, petitioner's attorney filed a

17   motion for rehearing and motion for leave to further supplement the pleadings in support of the

18   post-conviction petition.  (Exhibit 125).  By order filed January 17, 2012, the state district court

19   denied petitioner's motion.  (Exhibit 128).  On January 19, 2012, the state district court filed a

20   written order denying the post-conviction petition and supplement.  (Exhibit 129).

21        Petitioner appealed the denial of his post-conviction petition.  (Exhibit 133).  Petitioner's

22   opening brief was filed on July 23, 2012.  (Exhibit 140).  On May 13, 2013, the Nevada Supreme

23   Court issued an order affirming the denial of the post-conviction habeas petition.  (Exhibit 149).

24   Remittitur issued on June 7, 2013.  (Exhibit 150).

25        Petitioner signed his *pro se* federal petition on September 11, 2013.  (ECF No. 1-1, at p. 6).

26   On September 23, 2013, the court received the *pro se* petition, application to proceed *in forma*

27   *pauperis*, and cover letter requesting counsel.  (ECF No. 1, 1-1, 1-2).  By order filed December 17,

28   2013, this court granted petitioner's motion for the appointment of counsel.  (ECF No. 4).

1   Petitioner's appointed counsel filed the first amended petition on October 6, 2014.  (ECF No. 15).

2   Also on October 6, 2014, petitioner's counsel filed exhibits in support of the first amended petition.

3   (ECF Nos. 16-25).  On January 8, 2015, respondents filed the instant motion to dismiss the first

4   amended petition, arguing that the petition is untimely and that certain claims are unexhausted.

5   (ECF No. 28).  On April 13, 2015, through counsel, petitioner filed an opposition to the motion to

6   dismiss and a motion for a stay and abeyance.  (ECF Nos. 33 & 34).  Petitioner also filed

7   supplemental exhibits on April 13, 2015.  (ECF No. 35).  On April 30, 2015, respondents filed a

8   reply in support of the motion to dismiss and an opposition to petitioner's motion for a stay and

9   abeyance.  (ECF Nos. 38 & 39).  On May 8, 2015, petitioner filed a reply in support of the motion

10  for a stay and abeyance.  (ECF No. 40).

11  **II.  Discussion**

12         **A.  Arguments Regarding Timeliness**

13              **1.  Application of AEDPA Statute of Limitations**

14         The Antiterrorism and Effective Death Penalty Act (AEDPA) amended the statutes

15  controlling federal habeas corpus practice to include a one-year statute of limitations on the filing of

16  federal habeas corpus petitions.  With respect to the statute of limitations, the habeas corpus statute

17  provides:

18              (d)(1) A 1-year period of limitation shall apply to an application
                for a writ of habeas corpus by a person in custody pursuant to the
19              judgment of a State court.  The limitation period shall run from
                the latest of–

20
                     (A) the date on which the judgment became final by the
21                   conclusion of direct review or the expiration of the time
                     for seeking such review;
22
                     (B) the date on which the impediment to filing an
23                   application created by State action in violation of the
                     Constitution or laws of the United States is removed, if the
24                   applicant was prevented from filing by such State action;

25                   (C) the date on which the constitutional right asserted was
                     initially recognized by the Supreme Court, if the right has
26                   been newly recognized by the Supreme Court and made
                     retroactively applicable to cases on collateral review; or
27

28

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d).

For purposes of the AEDPA limitations period, "a judgment becomes 'final' in one of two ways – either by the conclusion of direct review by the highest court, including the United States Supreme Court, to review the judgment, or by the expiration of the time to seek such review, again from the highest court from which such direct review could be sought." *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001). "[W]hen a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires." *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). United States Supreme Court Rule 13.1 provides that a petitioner has ninety days from the entry of judgment or entry of an order denying rehearing, within which to file a petition for certiorari. Sup. Ct. R. 13.1. Rule 36(a) of the Nevada Rules of Appellate Procedure states that "[t]he filing of the court's decision or order constitutes entry of judgment." Where a petitioner pursues a direct appeal to the state's highest court but declines to pursue a petition for writ of certiorari with the United States Supreme Court, the petitioner's conviction becomes final upon the expiration of the time to file a petition for writ of certiorari. *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). Once the judgment of conviction becomes final, the petitioner has 365 days to file a petition for relief under 28 U.S.C. § 2254, with tolling of the time for filing during the pendency of a properly filed application for State post-conviction or other collateral relief regarding the same conviction. 28 U.S.C. § 2244(d).

In the instant case, the judgment of conviction was entered on November 2, 2006. (Exhibit 62). The Nevada Supreme Court's order of affirmance on direct review was filed on May 29, 2009. (Exhibit 103). The Nevada Supreme Court denied the petition for rehearing by order filed July 31, 2009. (Exhibit 105). The Nevada Supreme Court denied the petition for en banc reconsideration on

-4-

October 7, 2009.  (Exhibit 107).  Because petitioner did not file a petition for writ of certiorari to the United States Supreme Court, his conviction became final on January 5, 2010, which is ninety days after the Nevada Supreme Court filed its order denying the petition for en banc reconsideration.

On October 28, 2010, when petitioner filed his state habeas petition, 296 days of untolled time for filing a federal petition had elapsed.  (Exhibit 110).  The AEDPA limitations period was tolled until petitioner's state habeas petition and appeal from the denial of his petition was resolved by the Nevada Supreme Court.  *See* 28 U.S.C. § 2244(d)(2).  On May 13, 2013, the Nevada Supreme Court entered an order affirming the denial of petitioner's post-conviction state habeas petition.  (Exhibit 149).  Remittitur was issued on June 7, 2013.  (Exhibit 150).  The period of statutory tolling under 28 U.S.C. § 2244(d)(2) ended with the Nevada Supreme Court's issuance of remittitur on June 7, 2013.  The AEDPA statute of limitations began to run again and expired 69 days later, on August 15, 2013.

On the first page of the federal habeas petition, petitioner left blank the area where he should have indicated the date on which he gave the petition to correctional staff for mailing.  (ECF No. 1-1, at p. 1).  However, the petition was signed on September 11, 2013.  (*Id.*, at p. 8).  The earliest date on which the complaint could have been mailed is September 11, 2013.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (pursuant to the "mailbox rule," federal courts deem the filing date of a document as the date that it was given to prison officials for mailing).  The federal petition was filed untimely on September 11, 2013, which was 27 days after the expiration of the AEDPA statute of limitations.

## 2. Equitable Tolling

### a. Petitioner's Factual Contentions

In the opposition to the motion to dismiss, petitioner acknowledges that the original petition was untimely filed.  (ECF No. 34, at p. 5).  Petitioner argues that he is entitled to equitable tolling of the AEDPA statute of limitations.  (*Id.*, at pp. 5-15).  Petitioner asserts the following facts in support of equitable tolling: Attorney James Gallo was retained by petitioner's family to "pursue post-conviction remedies for Mr. Agavo."  (Exhibits 196 & 198).  According to Gallo, the original retention agreement was for post-conviction work in the state district court with additional fees for

-5-

the Nevada Supreme Court and a federal petition. (Exhibit 196, at ¶ 3). Petitioner claims it was his understanding that Gallo would represent him during the state post-conviction process and also during the federal court process. (Exhibit 198, at ¶ 1). Gallo filed a supplemental petition in the state district court, in support of petitioner's *pro se* post-conviction habeas petition. (Exhibit 115). After the post-conviction petition was denied by the state district court, Gallo represented petitioner on appeal to the Nevada Supreme Court. (Exhibit 140). According to Gallo, the family's ability to pay him at this point had "become strained." (Exhibit 196, at ¶ 3). However, because he felt that petitioner was wrongly imprisoned, Gallo "continued the appeal process through the Nevada Supreme Court for one-third of the original agreement." (*Id.*). On May 13, 2013, the Nevada Supreme Court issued its order affirming the denial of the post-conviction habeas petition. (Exhibit 149). The Nevada Supreme Court issued remittitur on June 7, 2013. (Exhibit 150). Petitioner claims that Gallo did not inform him that the state proceedings had ended until he received a letter from Gallo in late August 2013.

On August 1, 2013, petitioner's sister, Marisol Negrete, emailed Gallo complaining that she had been leaving messages for his office for weeks but Gallo had not responded. (Exhibit 176). Gallo responded to Ms. Negrete via email later that night. Gallo stated that he had worked extremely hard on petitioner's case, but that he was taking a financial loss on the case. He said, "unfortunately, I am not in a position to undertake future time losses." He explained that the federal public defender's office would take the case for free, but emphasized that paperwork needed to be filed as soon as possible. Gallo explained that he would prepare the paperwork for petitioner to sign. (*Id.*).

In a letter dated August 2, 2013, Gallo advised petitioner that he would not be representing him on the federal habeas petition. (Exhibit 177). Gallo enclosed a federal petition for petitioner to sign and file. (*Id.*). At the time the letter was sent, petitioner was incarcerated at High Desert State Prison in Indian Springs, Nevada. However, the letter was sent to the Nevada Department of Corrections at an address in Carson City, Nevada. (Exhibit 178).

On August 9, 2013, Marisol sent an email to Gallo stating that petitioner had not received the packet. She asked him to look into it because petitioner was "on a clock." (Exhibit 179).

1    On August 12, 2013, Gallo responded via email, "I just returned from out of town.  I sent it

2   next day air to the prison on July 29.  I have the receipt.  I will see if there was a problem later

3   today." (Exhibit 179).

4    In his declaration, Gallo states that his assistant mailed the letter and federal habeas petition

5   to an address for the prison she found online.  (Exhibit 196, at ¶ 7).  Gallo states that his assistant

6   made a clerical error in sending the packet to the wrong address and failing to send the packet to

7   petitioner at his place of incarceration.  (*Id.*).  Gallo states that he cannot recall if, by the time he

8   discovered the error, his original letter had made its way to petition or whether he mailed another

9   copy to the correct address.  (*Id.*).

10    Petitioner received the letter and petition that Gallo had prepared.  It arrived in an envelope

11   addressed to him at High Desert State Prison, and the prison mailroom stamped the envelope

12   received on August 23, 2013.  (Exhibit 180).  Petitioner does not give a precise date for when he

13   physically received the letter.  (Exhibit 198).  Petitioner states that once he received the letter, he

14   "gathered the paperwork I needed, completed the forms, and sent them without delay." (Exhibit

15   198, at ¶ 3).

16    On September 4, 2013, petitioner submitted a request for prison officials to execute a

17   financial certificate to include with his *in forma pauperis* application.  (ECF No. 1, at p. 4).  The

18   financial certificate is dated September 11, 2013, and was submitted with the *in forma pauperis*

19   application.  (*Id.*, at p. 5).  On the *in forma pauperis* application, the acknowledgment was signed

20   September 4, 2013, and the declaration was signed September 11, 2013.  (*Id.*, at p. 3).  Petitioner

21   signed the federal petition on September 11, 2013.  (ECF No. 1-1, at pp. 6, 8).  Petitioner attached to

22   the petition the letter he received from Gallo.  (*Id.*, at p. 9).

23                              **b.  Extraordinary Circumstances**

24    The United States Supreme Court has held that the AEDPA's statute of limitations "is

25   subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010).

26   The Supreme Court reiterated that "a petitioner is entitled to equitable tolling only if he shows: '(1)

27   that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in

28   his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544

1    U.S. 408, 418 (2005)).  In making a determination on equitable tolling, courts must "exercise

2    judgment in light of prior precedent, but with awareness of the fact that specific circumstances,

3    often hard to predict in advance, could warrant special treatment in an appropriate case." *Holland*,

4    560 U.S. at 650.  While "egregious" attorney conduct may create extraordinary circumstances

5    warranting equitable tolling, "a garden variety claim of excusable neglect . . . such as a simple

6    miscalculation that leads a lawyer to miss a filing deadline . . . does not warrant equitable tolling."

7    *Id.* at 651-52 (internal quotations omitted).

8        The Court in *Maples v. Thomas*, 132 S.Ct. 912, 923-24 (2012), clarified the *Holland*

9    decision's distinction between "garden variety" attorney negligence and egregious attorney

10   misconduct.[2]  *Maples* explained that while agency law binds clients to their attorneys' negligence,

11   "a client cannot be charged with the acts or omissions of an attorney who has abandoned him." *Id.*

12   at 924.  In *Gibbs v. LeGrand*, 767 F.3d 879, 885 (9th Cir. 2014), the court held that "[a]n attorney's

13   failure to communicate about a key development in his client's case can, therefore, amount to

14   attorney abandonment and thereby constitute an extraordinary circumstance."  In *Gibbs*, the court

15   noted that abandonment occurs when the attorney fails "to inform a client that his case has been

16   decided, particularly where the decision implicates the client's ability to bring further proceedings

17   and the attorney has committed himself to informing his client of such a development." *Id.* at 886.

18   The *Gibbs* court found that the attorney had abandoned a habeas petitioner when he failed to inform

19   petitioner that his case had been decided by the state supreme court, despite petitioner's repeated

20   attempts to engage the attorney about his pending post-conviction appeal.  Because of the attorney's

21   failure to notify petitioner that his state post-conviction proceedings were complete, petitioner failed

22   to meet the AEDPA deadline for filing a federal habeas corpus petition.  The *Gibbs* court found that

23   this type of attorney abandonment, resulting in a lack of actual notice, satisfies the extraordinary

24   circumstances prong of equitable tolling. *Id.* at 888.

---

26       [2] *Maples* involved the issue of whether cause existed to excuse a procedural default, rather
27   than entitlement to equitable tolling, but the United States Supreme Court saw "no reason" why the
     distinction between attorney negligence and attorney abandonment should not operate in both
28   contexts.  132 S.Ct. at 924 n.7.

1         In the instant case, petitioner's attorney, James Gallo, did not promptly notify petitioner

2 when the Nevada Supreme Court issued its order affirming the denial of the post-conviction habeas

3 petition on May 13, 2013.  More specifically, Gallo failed to inform petitioner that the Nevada

4 Supreme Court issued its remittitur on June 7, 2013, concluding the state post-conviction

5 proceedings.  It was not until August 1, 2013, just two weeks before the AEDPA deadline of August

6 14, 2013, that Gallo informed petitioner's family members that the state post-conviction case had

7 ended and that he did not intend to represent petitioner in federal court.  Nevertheless, he promised

8 to prepare a federal petition for petitioner to file.  On August 2, 2013, Gallo sent petitioner a letter

9 explaining that he could not represent petitioner in federal court, along with a federal petition for

10 petitioner to file *pro se*.  However, Gallo sent the letter and petition to the wrong address.  Once

11 Gallo realized that the letter and petition were sent to the wrong address, he resent both to

12 petitioner's address at High Desert State Prison, but petitioner did not receive it until at least August

13 23, 2013, after the AEDPA statute of limitations had expired.  This court concludes that Gallo's

14 conduct amounted to client abandonment such that petitioner is not responsible for the fact that he

15 did not learn of the completion of his state post-conviction proceedings until at least August 23,

16 2013.  Without notice of when his state post-conviction proceedings had concluded, petitioner was

17 unable to calculate the expiration of the AEDPA deadline.  Gallo's abandonment of his client and

18 failure to timely inform petitioner of the conclusion of state post-conviction proceedings constitute

19 "extraordinary circumstances" which prevented petitioner from meeting the AEDPA deadline for

20 filing a federal petition.

21                           **c. Petitioner's Diligence**

22         The standard of diligence required of a petitioner seeking equitable tolling is "reasonable,"

23 not "maximum feasible" care.  *Holland*, 560 U.S. at 653.  "[R]easonable diligence does not require

24 an overzealous or extreme pursuit of any and every avenue of relief."  *Doe v. Busby*, 661 F.3d 1001,

25 1015 (9th Cir. 2011).  Instead, "[i]t requires the effort that a reasonable person might be expected to

26 deliver under his or her particular circumstances."  *Id.*

27         Petitioner's family made contact with Gallo and received a response from him on August 1,

28 2013, just two weeks before the AEDPA statute of limitation expired.  At that time, and in his letter

1    to petitioner, Gallo informed petitioner and his family that he would not continue representing

2    petitioner in federal court.  However, he told petitioner's family that he would prepare a federal

3    petition for petitioner to sign.  As such, petitioner was justified in waiting to receive this petition

4    before filing in federal court, particularly because Gallo had never advised petitioner of the actual

5    date that his state proceedings had ended.  Petitioner's family again reached out to Gallo on August

6    9, 2013, when petitioner had not yet received the mailing containing the federal petition.

7         Once petitioner received the letter and petition from Gallo, which was, at the earliest on

8    August 23, 2013, he was diligent in filing the petition as soon as he could.  On September 4, 2013,

9    less than two weeks after the earliest date of his receipt of the mailing from Gallo, petitioner

10   requested a financial certificate from the prison so that he could file his petition along with a

11   complete *in forma pauperis* application.  It took a week to receive the financial certificate from

12   prison officials.  Once he received the financial certificate, on September 11, 2013, he signed the

13   petition, the declaration on the *in forma pauperis* application, and the cover letter included with the

14   petition.  It is reasonable to conclude that petitioner handed these documents to prison officials on

15   that date for mailing.  The court concludes that petitioner exercised reasonable diligence in pursuing

16   his rights.  This diligence, combined with the extraordinary circumstance that prevented petitioner

17   from filing a timely federal petition, entitles petitioner to equitable tolling of the AEDPA statute of

18   limitations up to and including the date that the original petition was received by this court on

19   September 23, 2013.

20                    **3.  Relation Back Analysis**

21        Respondents argue that the first amended petition, filed October 6, 2014, does not relate

22   back to the original petition.  Under Federal Rule of Civil Procedure 15, an amended pleading

23   "relates back" to the date of the original pleading when "the amendment asserts a claim or defense

24   that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the

25   original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  An amended habeas petition only relates back to

26   the original petition if the amended claims are tied to the "same core of operative facts" as alleged in

27   the original petition.  *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  *Mayle* held that an amended habeas

28   petition does not relate back to the original petition "when it asserts a new ground for relief

-10-

1   supported by facts that differ in both time and type from those the original pleading set forth."

2   *Mayle*, 545 U.S. at 650.  In *Mayle*, the petitioner originally raised only a Confrontation Clause claim

3   in his habeas petition, based on the admission of video-taped prosecution witness testimony.  545

4   U.S. at 648-49.  After the one-year AEDPA statute of limitations had passed, petitioner then sought

5   to amend his habeas petition to allege a Fifth Amendment claim based on coercive police tactics

6   used to obtain damaging statements from him.  *Id.*  The factual basis for each claim was distinct.

7   Petitioner then argued that his amended claim related back to the date of his original habeas petition

8   because the claim arose out of the same trial, conviction or sentence.  *Id.* at 659-661.  In rejecting

9   petitioner's argument the Supreme Court held that if "claims asserted after the one-year period

10  could be revived simply because they relate to the same trial, conviction, or sentence as a timely

11  filed claim, AEDPA's limitation period would have slim significance."  *Id.* at 662.

12                            **a. Ground 1**

13      Ground 1 of the amended petition alleges: "Agavo was denied his rights to confrontation and

14  to present a defense under the Fifth, Sixth, and Fourteenth Amendments to the United States

15  Constitution when the trial court precluded him from confronting the state's witnesses with the

16  evidence of an alleged prior act by Agavo." (ECF No. 15, at p. 8).  This is the same claim as ground

17  1 of the original petition, which stated: "The District Court violated my constitutional right to

18  confront and cross examine both the alleged victim and victim's mother regarding the credibility of

19  the accusations.  The court improperly ruled that I needed to file a Bad Acts Motion." (ECF No. 1-

20  1, at p. 4).  Petitioner indicated that this ground was raised in his direct appeal.  (*Id.*).  Respondents

21  argue that the original petition is devoid of any specific allegations addressing prior accusations of

22  abuse and how defense counsel could have used those prior accusations to attack the credibility of

23  the victim and her mother.  The operative facts should not be parsed so narrowly in this context.

24  Ground 1 of the original petition and ground 1 of the amended petition arise from the trial court's

25  preclusion of evidence of an alleged prior act that petitioner sought to use to impeach the State's

26  witnesses.  Ground 1 of the amended petition arises from the same core of operative facts as alleged

27  in ground 1 of the original petition.  *Mayle v. Felix*, 545 U.S. at 664 (an amended habeas petition

28  relates back to the original petition if the amended claims are tied to the "same core of operative

                                        -11-

1  facts" as alleged in the original petition).  Accordingly, amended ground 1 relates back to original

2  ground 1, and the amended claim is therefore timely.

3                      **b.  Ground 2**

4          Ground 2 of the amended petition alleges: "Agavo's right to due process and a fair trial

5  under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated

6  when the court improperly precluded the defense expert from rendering an expert opinion."  (ECF

7  No. 15, at p. 12).  Ground 2 of the original petition alleges: "The court violated my constitutional

8  right to have a fair trial by not permitting my expert, Dr. Chambers to render an expert opinion."

9  (ECF No. 1-1, at p. 4).  Respondents argue that the original petition does not include allegations

10  addressing the subject of Dr. Chambers' opinion, or allegations addressing Dr. Chambers'

11  qualifications to give an expert opinion.  Again, respondents are reading the operative facts too

12  narrowly.  Both claims arise from the same core of operative facts, specifically, the trial court's

13  preclusion of an opinion from the defense expert, Dr. Chambers.  *See Mayle v. Felix*, 545 U.S. at

14  664.  The court finds that amended ground 2 relates back to original ground 2 and is therefore

15  timely.

16                      **c.  Ground 3**

17          Ground 3 of the amended petition alleges: "Agavo was deprived of his rights to a fair trial

18  and due process under the Fifth, Sixth, and Fourteenth Amendments to the United States

19  Constitution based on the court's prejudicial conduct at trial."  (ECF No. 15, at p. 13).  Amended

20  ground 3 further alleges that "the trial judge made it evident to the jury that she was firmly aligned

21  with the State and was not impartial."  (*Id.*).  Ground 3 of the original petition stated: "District Court

22  Judge Jackie Glass violated my constitutional right to have a fair trial by demonstrating extreme

23  [bias] towards the State."  (ECF No. 1-1, at p. 4).  Respondents contend that the original petition

24  does not include any specific factual allegations regarding what the trial judge did that would

25  establish a claim of judicial bias.  The court rejects respondents' attempt to parse the allegations

26  more narrowly than is allowed under *Mayle v. Felix*, 545 U.S. at 664.  Both claims arise from

27  allegations that the trial judge was biased in favor of the State.  Amended ground 3 relates back to

28  original ground 3, and the amended claim is therefore timely.

### d. Ground 4

Ground 4 of the amended petition alleges: "Agavo was deprived of his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution based on prosecutorial misconduct at trial." (ECF No. 15, at p. 16). Ground 4 of the original petition alleges: "The State prosecutor denied me my constitutional right to due process and fair trial by engaging in misconduct in the form of personally vouching for the credibility of the witnesses and fraudulently misrepresented known facts to the jury." (ECF No. 1-1, at p. 4). Respondents contend that the amended petition addresses specific statements made by the prosecution during opening statements and closing arguments, but the original petition does not. Respondents argue that the amended petition contains specific facts about who the prosecutor vouched for and what facts the prosecutor misrepresented to the jury, but the original petition does not contain such specific facts. Both claims arise from the same core of operative facts, namely, the prosecutor's alleged misconduct in misrepresenting facts and vouching for witnesses. *See Mayle v. Felix*, 545 U.S. at 664. The court finds that amended ground 4 relates back to original ground 4 and is therefore timely.

### e. Ground 5

Ground 5 of the amended petition alleges: "Agavo was deprived of his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution where V.D. was referred to as a victim throughout the trial." (ECF No. 15, at p. 18). Ground 5 of the original petition alleges: "The state prosecution violated my constitutional right to due process and a fair trial by referring to V.D. as a 'victim' throughout the trial which unduly biased the opinion of the jury." (ECF No. 1-1, at p. 4). Respondents acknowledge that amended ground 5 arguably relates back to ground 5 of the original petition. Both claims arise from allegations that petitioner's constitutional rights were violated during trial because V.D. was referred to as a "victim" throughout trial. Amended ground 5 relates back to original ground 5, and the amended claim is therefore timely.

### f. Ground 6

Ground 6 of the amended petition alleges: "Agavo was denied his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution.

1    (ECF No. 15, at p. 19).  In Ground 6(a) of the amended petition, petitioner alleges that his trial

2    counsel failed to file pretrial motions to admit prior allegations of abuse that V.D. had made against

3    him in California.  (ECF No. 15, at pp. 19-20).  In Part II, Ground 6 of the original petition,

4    petitioner alleges:

5            Despite this case resulting in a hung jury after the first trial and my
             trial lawyer being advised that she must file a pretrial motion to allow
6            information related to prior bad acts, she failed to do so, my lawyer
             made the same arguments she made in the first trial, which were
7            denied during my second trial.  As a result, my attorney could not
             effectively cross examine my accuser at trial.  This violated my rights
8            pursuant to the U.S. Constitution.

9    (ECF No. 1-1, at p. 5).  Respondents argue that the original petition does not include specific facts

10   regarding the "prior bad acts" and how those facts could have been used to impeach anyone's

11   credibility at trial.  Once again, respondents too narrowly parse the operative facts.  Both claims rely

12   on the same core of operative facts, counsel's failure to file a prior bad acts motion.  The court finds

13   that amended ground 6(a) relates back to original petition and is therefore timely.

14           In Ground 6(b) of the amended petition, petitioner alleges that his trial counsel failed to

15   investigate the source of a drawing and failed to retain an expert witness to conduct a forensic

16   analysis on the drawing to determine its authenticity and whether it could have been drawn by

17   Agavo.  (ECF No. 15, at pp. 20-21).  In the original petition, at Part II, Ground 2, petitioner alleges

18   that:

19           My trial lawyer failed to investigate allegations that I drew a picture of
             myself marrying the alleged victim.  I am a talented artist and the
20           victim's allegations could have been disputed by an expert analysis of
             the drawing compared to my drawing skills.  This would have affected
21           the credibility of the alleged victim's statements accusing me of
             drawing a picture showing me marrying the alleged victim.  This
22           violated my rights pursuant to the U.S. Constitution.

23   (ECF No. 1-1, at p. 5).  Respondents contend that the original petition contained no reference to the

24   expert witness and the facts to which the expert would have testified.  Ground 6(b) of the amended

25   petition and the corresponding claim in the original petition both rely on the same core of operative

26   facts, specifically, counsel's failure to investigate the drawing and failure to pursue expert analysis

27   of the drawing.  The court finds that amended ground 6(b) relates back to original petition and is

28   therefore timely.

-14-

1    **4. Claim Based on Newly Discovered Evidence**

2        Ground 7 of the amended petition alleges: "Agavo's rights to due process and a fair trial

3    under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated

4    when the state suppressed favorable and material evidence; further the state knowingly used false

5    testimony." (ECF No. 15, at p. 22).  Petitioner alleges that, in violation of *Brady v. Maryland*, 373

6    U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), the prosecution failed to disclose

7    to the defense that it paid the mother of the victim, Natalia Diaz, over $2,500.00 for her and V.D.'s

8    testimony against him.  (*Id.*).  Respondents argue that this claim does not relate back to the original

9    petition.  Petitioner acknowledges that the *Brady* claim set forth in ground 7 of the first amended

10   petition does not relate back to the original petition.  Petitioner argues that ground 7 relies on newly

11   discovered evidence, so it is timely under 28 U.S.C. § 2244(d)(1)(D).

12       Where a claim in a habeas petition alleges newly discovered evidence, the one year AEDPA

13   statute of limitations begins to run on the date on which the factual predicate of the claims could

14   have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(D).  "Due

15   diligence does not require the maximum feasible diligence, but it does require reasonable diligence

16   in the circumstances."  *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (2012).  Although the due diligence

17   requirement is an objective standard, courts consider the petitioner's particular circumstances.  *Id.*

18       In the instant case, petitioner exercised reasonable diligence under the circumstances he

19   faced.  Petitioner was not put on notice that the State had been making payments to witnesses.

20   While certain payments are authorized to witnesses under NRS 50.225, petitioner alleges that

21   witness Natalia Diaz was paid money beyond what was authorized by state statute.  At trial, the

22   defense was led to believe that there were no payments made to Natalia Diaz.  (*See, e.g.* Exhibit 52,

23   at pp. 139-40).  Based on a series of newspaper articles from October 2013 through December of

24   2013, it was reported that the State had been providing payments to witnesses in excess of what was

25   authorized by statute.  (Exhibits 183-193).  On December 17, 2013, this court appointed the federal

26   public defender to represent petitioner in this habeas proceeding.  (ECF No. 4).  The federal public

27   defender filed a notice of appearance as petitioner's counsel on January 17, 2014.  (ECF No. 6).

28   The federal public defender's investigator, Abigail Goldman, has submitted a declaration describing

-15-

1   the laborious process by which she searched historical records of witnesses payments at the Clark

2   County comptroller's office in June and July of 2014 to find vouchers paid to Natalia Diaz.

3   (Exhibit 201).  On October 6, 2014, petitioner, through counsel, filed the first amended petition in

4   which he alleges a *Brady* violation concerning the payments made to Diaz.  (ECF No. 15).  The first

5   amended petition containing petitioner's *Brady* claim was filed within months of finding evidence

6   of alleged excessive payments to Diaz.  Because the *Brady* claim was raised within one year of

7   when the evidence could have been first discovered through the exercise of due diligence, Ground 7

8   of the first amended petition is timely.  28 U.S.C. § 2244(d)(1)(D).

9           **B.  Arguments Regarding Exhaustion of Claims**

10          Respondents contend that certain grounds of the amended habeas petition are unexhausted.

11  Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a

12  claim before presenting that claim to the federal courts.  To satisfy the exhaustion requirement, the

13  claim must have been fairly presented to the state courts completely through to the highest court

14  available, in this case, the Nevada Supreme Court.  *See, e.g., Peterson v. Lampert*, 319 F.3d 1153,

15  1156 (9th Cir. 2003) (en banc); *Yang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003).  In the state

16  courts, the petitioner must refer to the specific federal constitutional guarantee and must also state

17  the facts that entitle the petitioner to relief on the federal constitutional claim.  *Shumway v. Payne*,

18  223 F.3d 983, 987 (9th Cir. 2000).  Fair presentation requires that the petitioner present the state

19  courts with both the operative facts and the federal legal theory upon which the claim is based.  *See,*

20  *e.g. Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).  The exhaustion requirement ensures

21  that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon

22  and correct alleged violations of federal constitutional guarantees.  *See Coleman v. Thompson*, 501

23  U.S. 722, 731 (1991).

24          **1.  Ground 2**

25          Ground 2 of the first amended petition alleges that the state district court improperly

26  precluded defense expert Dr. Chambers from rendering an expert opinion at trial, violating his rights

27  to a due process and a fair trial.  (ECF No. 15, at p. 12).  In his opening brief on direct appeal,

28  petitioner argued: "Since the evidence was relevant and the court erroneously precluded Dr.

-16-

1  Chambers from providing his expert opinion, Agavo's constitutional right to a fair trial and due

2  process of law was violated." (Exhibit 94, at p. 32). Petitioner presented the Nevada Supreme

3  Court with the same facts and legal theory as alleged in ground 2 of the first amended petition. The

4  court finds that ground 2 of the first amended petition is exhausted.

5            **2.  Ground 6(b)**

6         Ground 6(b) of the first amended petition alleges that petitioner's trial counsel failed to

7  investigate the source of a drawing and failed to retain an expert witness to conduct a forensic

8  analysis on a drawing admitted at trial to determine its authenticity and whether it could have been

9  drawn by petitioner. (ECF No. 15, at pp. 20-21). Respondents argue that ground 6(b) is at least

10  partially unexhausted because petitioner presented allegations regarding the actual testimony of the

11  expert witness in a motion for reconsideration. Respondents thus conclude that petitioner failed to

12  present those allegations to the Nevada courts in a procedural context where the courts were likely

13  to have reached to the merits of the issue.

14         While it is true that exhaustion may not be effectuated by a procedurally defective or

15  improper means, *Castille v. Peoples*, 489 U.S. 346 (1989), petitioner in the instant case did not

16  present his claim to the Nevada state courts in a procedural defective manner. Petitioner presented

17  the argument made in ground 6(b) to the Nevada state district court in his post-conviction habeas

18  petition. (Exhibit 115, at pp. 20-22). Petitioner presented this issue to the Nevada Supreme Court

19  in his opening brief on appeal of the denial of his post-conviction habeas petition. (Exhibit 140, at

20  pp. 24-30). The Nevada Supreme Court specifically addressed the merits of the claim in its order of

21  affirmance filed May 13, 2015. (Exhibit 149, at p. 2). To the extent that respondents take issue

22  with the portion of the claim regarding the expert report raised in petitioner's motion for

23  reconsideration (Exhibit 125), the Nevada Supreme Court did not hold that the claim was not

24  properly before it or was raised in a procedurally defective manner. In its order of affirmance, the

25  Nevada Supreme Court expressed doubt that a motion for reconsideration could be filed in a post-

26  conviction proceeding, but it did not deny petitioner's claim on that ground. (Exhibit 149, at pp. 2-

27  3). The Nevada Supreme Court assumed, without deciding, that such a motion could be filed in a

28  post-conviction proceeding and then denied the argument on its merits. (Exhibit 149, at p. 3).

1   Petitioner presented the Nevada courts with the same facts and legal theory as alleged in ground 6(b)

2   of the first amended petition.  The court finds that ground 6(b) of the first amended petition is

3   exhausted.

4                   **3.  Ground 7**

5          Respondents contend that ground 7 of the first amended petition is unexhausted.  Petitioner

6   concedes that the claim in ground 7 is unexhausted.  (ECF No. 15, at p. 22; ECF No. 34, at p. 29).

7   Petitioner seeks a stay and abeyance in order to exhaust ground 7 in the Nevada state courts, as

8   discussed *infra*.

9          **C.  Arguments Regarding Motion for Stay and Abeyance**

10         Petitioner seeks a stay and abeyance for the purpose of exhausting ground 7 in the Nevada

11  state courts.  (ECF No. 34, at pp. 29-32).  In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme

12  Court placed limitations upon the discretion of the court to facilitate habeas petitioners' return to

13  state court to exhaust claims.  The *Rhines* Court stated:

14              [S]tay and abeyance should be available only in limited
                circumstances.  Because granting a stay effectively excuses a

15              petitioner's failure to present his claims first to the state courts, stay
                and abeyance is only appropriate when the district court determines

16              there was good cause for the petitioner's failure to exhaust his claims
                first in state court.  Moreover, even if a petitioner had good cause for

17              that failure, the district court would abuse its discretion if it were to
                grant him a stay when his unexhausted claims are plainly meritless.

18              *Cf.*  28 U.S.C.  § 2254(b)(2) ("An  application for a writ of habeas
                corpus may be denied on the merits, notwithstanding the failure of the

19              applicant to exhaust the remedies available in the courts of the State").

20  *Rhines*, 544 U.S. at 277.  The Court in *Rhines* went on to state that, "[I]t likely would be an abuse of

21  discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good

22  cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no

23  indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Id.* at 278.  The

24  United States Supreme Court has also stated that:  "[a] petitioner's reasonable confusion about

25  whether a state filing would be timely will ordinarily constitute 'good cause' to excuse his failure to

26  exhaust."  *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (citing *Rhines*, 544 U.S. at 278).  The

27  court may stay a petition containing both exhausted and unexhausted claims if: (1) the habeas

28  petitioner has good cause; (2) the unexhausted claims are potentially meritorious; and (3) petitioner

has not engaged in dilatory litigation tactics. *Rhines*, 544 U.S. at 277. The Ninth Circuit has held that the application of an "extraordinary circumstances" standard does not comport with the "good cause" standard prescribed by *Rhines*. *Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005). A *Rhines* stay and abeyance, allowing a petitioner to return to state court with his *Brady* claim based on newly discovered evidence, is appropriate where petitioner has good cause for not presenting the new evidence to the state court, has not engaged in dilatory litigation tactics, and has a potentially meritorious claim. *Gonzalez v. Wong*, 667 F.3d 965, 977-80 (9th Cir. 2011).

In the instant case, petitioner has good cause for his failure to previously present his *Brady* claim to the Nevada state courts. As outlined in ground 7 of the first amended petition, petitioner alleges that the defense was never informed of the payments and had no evidence of the payments made to Natalia Diaz. Petitioner contends that the defense was actually led to believe that Diaz did not receive any money in exchange for her testimony. The State's alleged failure to disclose payments to Diaz presented a circumstance beyond petitioner's control which prevented him from raising his *Brady* claim previously. Petitioner has demonstrated good cause under *Rhines* for the failure to exhaust ground 7 in the Nevada state courts prior to filing it in federal court. Ground 7 of the first amended petition is not "plainly meritless" under the second prong of the *Rhines* test. *See Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (court's authority to dismiss an unexhausted habeas claim is limited to situations "when it is perfectly clear that the applicant does not even raise a colorable federal claim"). Finally, there is no indication that petitioner engaged in dilatory litigation tactics. This court concludes that petitioner has satisfied the criteria for a stay under *Rhines*. Petitioner's motion for a stay of this federal habeas corpus proceeding is granted.

## III.   Conclusion

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 28) the first amended petition is **DENIED.**

**IT IS FURTHER ORDERED** that petitioner is entitled to equitable tolling, excusing the untimely filing of the original petition.

**IT IS FURTHER ORDERED** that grounds 1-6 of the first amended petition relate back to the original petition and are timely.

1    **IT IS FURTHER ORDERED** that ground 7 of the first amended petition, based on newly

2 discovered evidence, is timely pursuant to 28 U.S.C. § 2244(d)(1)(D).

3    **IT IS FURTHER ORDERED** that all grounds of the first amended petition, except ground

4 7, are exhausted.

5    **IT IS FURTHER ORDERED** that petitioner's motion for a stay and abeyance (ECF No.

6 34) is **GRANTED.**

7    **IT IS FURTHER ORDERED** that this action is **STAYED** pending exhaustion of ground 7

8 in the Nevada state courts.  Petitioner may move to reopen the matter following exhaustion of

9 ground 7.

10    **IT IS FURTHER ORDERED** that the grant of a stay is conditioned upon petitioner filing a

11 state post-conviction petition or other appropriate proceeding in state court within **forty-five (45)**

12 **days** from the entry of this order and returning to federal court with a motion to reopen within

13 **forty-five (45) days** of issuance of the remittitur by the Nevada Supreme Court at the conclusion of

14 the state court proceedings.

15    **IT IS FURTHER ORDERED** that as a condition of the stay, petitioner shall exhaust all of

16 his unexhausted claims in state court during the stay of this action.

17    **IT IS FURTHER ORDERED** that the clerk shall **ADMINISTRATIVELY CLOSE** this

18 action, until such time as the court grants a motion to reopen the matter.

19
          Dated  September 23, 2015.
20

21

22
                                        _____
23                                        UNITED STATES DISTRICT JUDGE

24

25

26

27

28